UNITED STATES TAX COURT

DAN ROTTA,

                      Petitioner,

-v-

COMMISSIONER OF INTERNAL REVENUE,

                      Respondent.

Docket No. 22846-14

**AFFIDAVIT**

GOVERNMENT EXHIBIT

1:24-MJ-2479-Reid

No. 17

STATE OF                 )
                                  : ss
COUNTY OF             )

SERGIO M. CERNEA, being duly sworn, deposes and says:

    1.    I make this affidavit in support of my understanding that the loans I have extended to Dan Rotta ("Mr. Rotta") in the period 2009 through 2013 inclusive represent bona fide indebtedness to me that I fully expect to be repaid in their totality.

    2.    I am a Brazilian national and resident, and Mr. Rotta is a cousin of mine and has been a personal friend of mine for decades.

    3.    From my very lengthy acquaintanceship with Mr. Rotta, I can attest of my own knowledge to his upright moral character and personal integrity.

    4.    In 2009, when Mr. Rotta approached me for a loan, I was aware that he had suffered business reverses in recent years and that he was burdened with numerous expenses, which included carrying costs for his real properties, as well as ongoing alimony and child support costs.

    5.    At the same time, having been a guest of Mr. Rotta's when visiting the United States from time to time, I was personally familiar with his real properties, which were

comprised of extremely valuable residential properties on Long Island and in Florida and a cooperative apartment in Manhattan.

6. Mr. Rotta informed me that he had placed the Long Island and Florida properties on the market for sale and would repay me from the proceeds of sale.

7. Mr. Rotta further advised me that he had also borrowed approximately $2,000,000 from the late Hugo and Valerie Ramniceanu, whom I had known as friends of myself and of my parents (as well as of Mr. Rotta and of Mr. Rotta's parents), and that he anticipated repaying their son-in-law, Jean-Sylvain Barel ("Mr. Barel"), from the proceeds of sale of the same properties.

8. I fully believed, and continue to believe today, that the value of Mr. Rotta's Long Island and Florida properties was, and continues to be, sufficiently high so as to allow both Mr. Barel and me to fully recoup the loans that Mr. Barel's parents and I have extended to Mr. Rotta over the years, plus interest thereon.

9. My initial loan to Mr. Rotta was a total of $850,000, which was remitted in two tranches to Pevima Corporation, the entity through which Mr. Rotta conducted his business, $450,000 on October 26, 2009 and $400,000 on November 3, 2009.

10. The $850,000 I loaned to Mr. Rotta came to him from Edelweiss Corporation Ltd. ("Edelweiss"), a foreign corporation that I own and which has no presence in the United States. Mr. Rotta has never owned any interest in Edelweiss and has never performed any services for it, or for me. Mr. Rotta also has never had any beneficial interest in any foreign bank account of Edelweiss or, to the best of my knowledge, in any other foreign bank account.

11. On November 18, 2009, I presented to Mr. Rotta a form of note payable to Edelweiss that I had prepared to memorialize the aforementioned loan, which he signed on

December 1, 2009. The note, a copy of which is attached hereto as Exhibit A, provided for 3.5% interest, to be paid together with principal at such time as one or both of his Florida or Long Island properties is sold. I did not provide a fixed maturity date nor did I request that a mortgage on the properties be granted to me because I believed that the properties would be sold in the course of time, and as I stated previously, I have the utmost personal trust in Mr. Rota. Indeed, in a demonstration of his good faith, Mr. Rotta has made interest payments to Edelweiss, and a copy of my acknowledgement of such payments is attached hereto as Exhibit B.

12. My subsequent loans to Mr. Rotta, which totaled $1,000,000 in 2010, $951,000 in 2011, $601,000 in 2012 and $846,000 in 2013, followed a similar pattern. He would sign a note to Edelweiss, providing for 3.5% interest, to be paid together with principal at such time as one or both of the foregoing properties is sold. Copies of the notes that Mr. Rotta signed for my loans to him in the years 2010 through 2013 are attached hereto as Exhibits C through F, respectively.

13. I believe that neither property has sold to date because they are high-end, unique properties for which there is a limited market, but, in my view, they are very desirable properties that will eventually sell for seven- or eight-figure sums.

14. Because of my close relationship with Peter Rotta ("Peter"), Mr. Rotta's son, I have from time to time made monetary gifts to him, including a gift of $149,000 which I made to Peter in 2010. These gifts, however, stand in distinction to the loans I have made to Mr. Rotta, which I fully expect to have repaid.

15. As of today's date, nothing that has taken place in the intervening period since 2009 has impaired my belief and confidence that Mr. Rotta, my good friend and cousin, will

3

repay my loans in full, with interest, at such time as his Florida and/or Long Island property is sold.

16. I have personal knowledge of the facts set forth in this affidavit, and if called as a witness I am prepared to testify to the accuracy and truthfulness of such facts.

_____
SERGIO M. CERNEA

Sworn to before me this
__11__ day of November 2015

_____
Notary Public

BEATRIZ MUNOZ
Notary Public - State of Florida
My Comm. Expires Jan 15, 2017
Commission # EE 839810

4